# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STACY W. ,**[1] | No. 3:18-cv-01686-HZ |
| Plaintiff, | OPINION & ORDER |
| v. | |
| **NANCY A. BERRYHILL,** acting COMMISSIONER of Social Security, | |
| Defendant. | |

Lisa R. J. Porter
JP Law PC
5200 SW Meadows Rd., Suite 150
Lake Oswego, OR 97035

     Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600

---

[1] In the interest of privacy, this Judgment uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

Portland, OR 97204

Jeffrey E. Staples
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Stacy W. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her applications for Disability

Insurance Benefits ("DIB") under Title II and Supplemental Security Insurance ("SSI") under

Title XIV of the Social Security Act (the "Act"). The Commissioner's decision is reversed and

remanded for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI on February 4, 2016, alleging disability

beginning on August 21, 2015. Tr. 86. The Commissioner denied Plaintiff's application initially

and upon reconsideration. Tr. 86. Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ"). *Id.* In a decision dated April 3, 2018, the ALJ found Plaintiff not disabled. Tr.

86-97. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

final decision of the Commissioner. Tr. 1–4; *see also* 20 C.F.R. § 422.210(a). Plaintiff seeks

judicial review of that decision. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Plaintiff was born in July 1980 and was 35 years old on the alleged onset date. Tr. 79. She

alleged disability due to headaches, vertigo, dizziness, fibromyalgia, tremors, and depression. Tr.

88, 294.  She completed two years of college and has past relevant work experience as a

collections agent, county clerk, and medical assistant. Tr. 295-96. She stopped working on

August 26, 2015 due to her symptoms. Tr. 294.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous
period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id. See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S DECISION

The ALJ performed the sequential analysis. Tr. 86-97. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of August 21, 2015. Additionally, the ALJ found Plaintiff met the insured status requirements of the Act through September 30, 2016. Tr. 88. At step two, the ALJ found Plaintiff had the following severe impairments: headaches, essential tremor, and vertigo. *Id*. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the specific impairments listed in the regulations. Tr. 90.

The ALJ next determined Plaintiff's RFC and found she could perform a full range of work at all exertional levels, with the following limitations:

> She can do no more than occasional climbing and balancing; she should have no exposure to hazards such as dangerous machinery and unprotected heights; and she should not operate heavy machinery or motor vehicles.

Tr. 90. At step four, the ALJ found Plaintiff was able to perform her past relevant work as a medical assistant, general office worker, and collections clerk. Tr. 96. The ALJ therefore concluded that Plaintiff was not disabled from August 21, 2015, through the date of the decision. Tr. 97.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin*., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance."

*Bray v. Comm'r Soc. Sec. Admin*., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id*. (citing *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id*.; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) failing to provide clear and convincing reasons to discount Plaintiff's credibility; (B) improperly evaluating the medical evidence; (C) failing to provide germane reasons to discount lay witness testimony; and (D) failing to incorporate all credible medical findings into her RFC.

## I.      Credibility Determination

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341,

344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, reject testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Plaintiff alleged disability primarily due to daily headaches. Tr. 109. At the administrative hearing, Plaintiff testified that her medications do not relieve her headaches. Tr. 108-11. She cannot lift a gallon of milk and finds it challenging to get dressed. Tr. 112. She is not capable of doing much during the day and requires assistance with groceries and with getting

undressed. Tr. 113-14. Her headaches worsen if she stands up for long periods during the day. Tr. 114-15. Plaintiff also suffers from tremors and significant arm and shoulder pain. Tr. 126-28.

Although the ALJ noted that Plaintiff was consistent in describing her headaches, he rejected Plaintiff's testimony. Tr. 91, 93. First, the ALJ found that Plaintiff's subjective symptom statements were not credible because they conflicted with her activities—specifically, he found that she was not credible as to the intensity of her symptoms and limitations because she was able to travel to Disneyland. Tr. 92-93, 123-24, 991.

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart,* 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001)).

The ALJ's finding that Plaintiff's testimony was inconsistent with her ability to go on a vacation to Disneyland was not a clear and convincing reason for rejecting her testimony. In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. Here, Plaintiff acknowledged that the trip was spent mostly in a hotel room, lying down. Tr. 124. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the

claimant's credibility. *Id.* at 722–23. Plaintiff's single trip to Disneyland during the relevant period was not a clear and convincing reason for rejecting her subjective symptom testimony. *Lingenfelter*, 504 F.3d at 1036.

The ALJ also found that Plaintiff's testimony was unsupported by her treatment record. Tr. 91-93. The ALJ may not reject testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. Plaintiff's reports of headaches and other subjective symptoms are consistent throughout the record and are not contradicted by objective medical findings. Tr. 91-92, 382-404, 547. On this record, because the ALJ failed to provide a single clear and convincing reason for rejecting Plaintiff's testimony, the ALJ erred in his credibility determination.

## II.     Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.; see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a

treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F. 2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042–43.

**A. Examining Physician James J. Nakashima, M.D.**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting the medical opinion of examining physician James Nakashima, M.D. Dr. Nakashima examined Plaintiff in October of 2017. Tr. 93, 1048-55. He noted Plaintiff's history of headaches and pain and observed lateral flexion to her neck because of pain. Tr. 1054. He diagnosed fibromyalgia based on her function scores and Plaintiff's significant pain. Tr. 551, 1041, 1054.

The ALJ gave limited weight to Dr. Nakashima's opinion. Tr. 94-95. The ALJ first found that Dr. Nakashima's findings were based on Plaintiff's discredited testimony rather than objective clinical observations and tracked closely with Plaintiff's self-reported pain and limitations. Tr. 95, 1050-51. While an ALJ may reject a medical opinion based on a claimant's self-reports that have been properly discounted as incredible, *Tommasetti*, 655 F.3d at 1041, the ALJ here failed to provide clear and convincing reasons to reject Plaintiff's testimony. The fact that Dr. Nakashima's opinion was based in part on Plaintiff's subjective reports was therefore not a legally sufficient reason for rejecting it. *Id.* At 1040.

The ALJ also found that Dr. Nakashima's opinion conflicted with the medical opinion of consultative physician Lloyd Wiggins, M.D., who reviewed Plaintiff's medical records and concluded that she was not disabled. Tr. 95, 163-84. As a consultative physician, however, Dr. Wiggins' opinion was entitled to lesser weight than that of examining physician Dr. Nakashima. *Holohan*, 246 F.3d at 1202 (an examining physician's opinion carries more weight than a reviewing physician's). On this record, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Nakashima's opinion.

### B. Examining Physician Juliette Preston, M.D.

The ALJ also rejected the opinion of examining physician Juliette Preston. Tr. 95. Relying on her examination of Plaintiff and other medical evidence, Dr. Preston opined that Plaintiff had multiple functional limitations that would cause her to be absent from work more than four times per month. Tr. 1056-62. She also noted that sixteen different medications, including Botox, had failed to manage Plaintiff's symptoms. Tr. 1058.

The ALJ afforded "little weight" to Dr. Preston's opinion, stating that "similar[ly] to Dr. Nakashima's statement" it was unsupported by objective evidence and conflicted with the findings of consultative physician Dr. Wiggins. Tr. 95. However, as noted, Dr. Nakashima's opinion was based on Plaintiff's credible self-reports, which the ALJ did not provide legally sufficient reason to reject. To the extent that Dr. Preston's opinion was also based on Plaintiff's reports, then, the ALJ did not provide a legally sufficient to reject it. Dr. Preston also supported her opinion with objective treatment notes, diagnosing a migraine disability score of 265 (indicating severity), recording Plaintiff's reports of daily headaches and ineffective medication trials. Tr. 547, 572, 989, 991-93, 1038, 1052. Lack of support by evidence in the record therefore does not constitute a legally sufficient reason for rejecting Dr. Preston's opinion.

While the ALJ also found that Dr. Preston's opinion conflicted with that of consultative physician Dr. Wiggins, as discussed above, the opinion of an examining physician like Dr. Preston is entitled to greater weight than that of a consultative, non-examining physician. *Holohan*, 246 F.3d at 1202 (and an examining physician's opinion carries more weight than a reviewing physician's). The ALJ was therefore not entitled to reject Dr. Preston's opinion in favor of Dr. Wiggins' consultative medical opinion. *Id.* On this record, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Preston's opinion.

### C. Treating Therapist Laura LaRosa, M.S.W., L.C.S.W.

Plaintiff also argues that the ALJ erred by rejecting the opinion of her treating therapist, Laura LaRosa, M.S.W., L.C.S.W. Ms. LaRosa was Plaintiff's treating therapist between September 2017 and January 2018. Tr. 1068-90. She completed a mental RFC questionnaire and assessed moderate limitations in Plaintiff's abilities to understand and apply information, and to interact with others. Tr. 1064-67.

As a therapist, Ms. LaRosa was an "other" medical source. SSR 06-03p. To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111. The ALJ found Ms. LaRosa's opinion to have "little probative or persuasive value" because it was inconsistent "with the record as discussed above." Tr. 95. The ALJ appears to be referring to an inconsistency with the opinion of Dr. Wiggins, who did not examine Plaintiff but found that she was able to work based on his review of the longitudinal record. Tr. 95, 163-84. Because Ms. LaRosa was not an "acceptable medical source" under the regulations at the time Plaintiff's claim was filed, Dr. Wiggins' opinion was entitled to controlling weight. *See* SSR 06-03p (An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source). The ALJ provided a germane reason for rejecting Ms. LaRosa's opinion. *Molina*, 674 F.3d at 1111.

## III.    Lay Witness Testimony

Plaintiff also argues that the ALJ erred in rejecting the lay testimony of Michlain Wilson, Roger McClure, and Mitch Watkins. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id*. Thus, an ALJ may not reject such testimony without comment. *Id*. In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding ... lay witness testimony, either individually or in the aggregate." *Id*. at 1115 (quoting *Nguyen Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id*. at 1118–19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.' "*id*. at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores uncontradicted lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Lay witnesses Michlain Wilson, Roger McClure, and Mitch Watkins submitted letters and function reports regarding their observations of Plaintiff's symptoms and limitations. Tr. 371-73. Plaintiff's best friend Ms. Wilson testified that Plaintiff was unable to engage in full-time work activity and suffers from worsening headaches. Tr. 371. Mr. McClure stated that he had known Plaintiff all his life and that she "can't do anything anymore," including working and engaging in activities. Tr. 372. Plaintiff's husband, Mr. Watkins, generally corroborated Plaintiff's testimony regarding her debilitating headaches. Tr. 373.

The ALJ found that the lay witness testimony was unsupported by the medical evidence. Tr. 96. As discussed above, the ALJ credited the findings of consulting physician Dr. Wiggins, who assessed mild to moderate limitations consistent with the requirements of Plaintiff's past relevant work. Tr. 163-84. Inconsistency with medical evidence is a germane reason for

rejecting lay testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ

provide legally sufficient reason to reject the lay witness testimony.

## IV.    Remand

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test.

*Id.* at 1020; *see also Treichler*, 775 F.3d at 1100 ("credit-as-true" rule has three steps). First, the

ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully

developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if

the case is remanded and the improperly discredited evidence is credited as true, the ALJ would

be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must

be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case

raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary

remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances.

*Treichler*, 775 F.3d at 1101.

Here, the ALJ failed to provide legally sufficient reason for rejecting Plaintiff's testimony

and the opinions of Drs. Nakashima and Preston. Remand is appropriate to give the ALJ the

opportunity to properly resolve conflicts in the medical record and, if necessary, formulate a new

RFC and take new testimony from a vocational expert. Because there are outstanding issues that

must be resolved before a determination of disability can be made, the case is remanded for

further proceedings.

**CONCLUSION**

The Commissioner's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 30th day of July, 2019.

Marco Hernandez
United States District Judge